**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| UNDERCOVER, INC. and LAURMARK ENTERPRISES, INC. d/b/a BAK INDUSTRIES, | ) ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) | |
| v. | ) ) ) | Case No. 1:24-cv-1093-JPM-jay |
| ROUGH COUNTRY, LLC, | ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) | |

## CLAIM CONSTRUCTION ORDER

This case is before the Court for claim construction pursuant to <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 979 (Fed. Cir. 1995), <u>aff'd</u>, 517 U.S. 370 (1996). A <u>Markman</u> hearing was held on March 4, 2025. (<u>See</u> ECF No. 74 (Minute Entry).)

## I. BACKGROUND

### A. Factual Background

This dispute relates to the claimed inventions of U.S. Patent Nos. 9,815,358 (the "'358 Patent"), 8,690,224 (the "'224 Patent"), and 7,537,264 (the "'264 Patent") (collectively, the "Asserted Patents"). (ECF No. 1 at PageID 1–2.) The Asserted Patents generally relate to tonneau covers or "tonneaus," which are truck bed covers used to protect pickup truck beds against the environment. (<u>Id.</u>) The Complaint asserts Defendant Rough Country, LLC ("Rough Country" or "Defendant") infringes at least one claim of one or more of the Asserted Patents through its

products ("Accused Products"), including but not limited to the Rough Country Hard Tri-Fold Flip Up Bed Cover series.  (Id. at PageID 6–7.)

The '358 Patent relates to foldable tonneau covers for shielding a cargo box of a pickup truck, and specifically the forward section of such foldable tonneau covers.  See '358 Patent col. 1 ll. 6–9.

The '224 Patent and '264 Patents relate to a cover assembly for pickup truck cargo boxes with attachable rails to the sides of the cargo box, where a multi-panel covering is supported on the rails and the panels are connected by hinge strips.  See '224 Patent col. 1 ll. 52–60; '264 Patent col. 1 ll. 44–52.

An example graphic demonstrating the technology from all three patents is below:



(ECF No. 1-3 at PageID 20.)

**B.    Procedural Background**

The Parties filed their Opening Claim Construction Briefs on December 17, 2024.  (See ECF Nos. 67 (Def.), 68 (Pls.).)  They filed their Responsive Claim Construction Briefs on January

23, 2025.  (<u>See</u> ECF Nos. 69 (Def.), 70 (Pls.).)  The Court held its Claim Construction Hearing on

March 4, 2025.  (<u>See</u> ECF No. 74 (Minute Entry).)

## II.    LEGAL STANDARD

### A.    Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to

which the patentee is entitled the right to exclude.'"  <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312

(Fed. Cir. 2005) (citation omitted).  Courts, as a matter of law, must construe the claims of a patent

to ascertain precisely what is patented.  <u>See</u> <u>id.</u>; <u>Markman</u>, 517 U.S. at 387.

In claim construction, the words in the claims are "generally given their ordinary and

customary meaning," that is, "the meaning that the term would have to a person of ordinary skill

in the art [("POSITA")] in question at the time of the invention."  <u>Phillips</u>, 415 F.3d at 1312–

13 (quotations omitted).  "There are only two exceptions to this general rule: 1) when a patentee

sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full

scope of a claim term either in the specification or during prosecution."  <u>Thorner v. Sony Comput.</u>

<u>Ent. Am. LLC</u>, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citation omitted).  The ordinary and

customary meaning "may be readily apparent even to lay judges."  <u>Phillips</u>, 415

F.3d at 1314 (citation omitted).  Where that is the case, claim construction involves "little more

than the application of the widely accepted meaning of commonly understood words."  <u>Id.</u>

When the ordinary and customary meaning is not immediately apparent, courts look to

other sources of evidence: "the words of the claims themselves, the remainder of the specification,

the prosecution history, and extrinsic evidence concerning relevant scientific principles, the

meaning of technical terms, and the state of the art."  <u>Id.</u> (citation omitted).

In Phillips, the Federal Circuit provided guidance on the relative weight given to evidence from these various sources. Id. First, "the claims themselves provide substantial guidance as to the meaning of particular claim terms," particularly the "context in which a term is used in the asserted claim." Id. at 1314.

Second, because claims are part of a "fully integrated written instrument," they must "be read in view of the specification, of which they are a part." Id. Indeed, "[a] patent's specification provides necessary context for understanding the claims and is always highly relevant to the claim construction analysis." Abbott Labs. v. Sandoz, Inc., 566 F.3d 1282, 1288 (Fed. Cir. 2009) (quoting Phillips, 415 F.3d at 1315). The specification may give insight into "practically incontrovertible directions about claim meaning," such as when inventors "act as their own lexicographers" or "intentionally disclaim, or disavow, subject matter that would otherwise fall within the scope of the claim." Id. The Court, however, must take care neither "to import limitations into the claims from the specification" nor to allow the claims to "enlarge what is patented beyond what the inventor has described as the invention." Id. (internal citations and quotation marks omitted).

Third, the prosecution history of the patent is also "intrinsic evidence" that courts consider when determining the meaning of disputed terms. Phillips, 415 F.3d at 1317. A patentee may disavow or disclaim certain subject matter through their prosecution history via a "clear and unmistakable statement." Abbott Labs., 566 F.3d at 1289.

In addition to intrinsic evidence, courts may also consider extrinsic evidence. Phillips, 415 F.3d at 1317. Extrinsic evidence includes "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Id. (citation

omitted).  Such evidence, however, is "less significant than the intrinsic record in determining the legally operative meaning of claim language."  Id. (quotations omitted)).

The Court's Markman analysis need not "repeat or restate every claim term in order to comply with the ruling that claim construction is for the court."  U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997).  Rather, "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement."  Id.

**B.    Indefiniteness**

"Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction."  Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306, 1319 (Fed. Cir. 2008).  "A patent is invalid for indefiniteness if its claims, read in light of the patent's specification and prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898, 898–99 (2014). "Because a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence."  Young v. Lumenis, Inc., 492 F.3d 1336, 1345 (Fed. Cir. 2007).

## III.    CLAIM CONSTRUCTION

### A.    Agreed-Upon Terms/Terms Preserved for Appeal

| Claim Term No. | Term, Patent, Claim(s) | Agreed-Upon Construction |
|---|---|---|
| 1 | resilient hinge stripe<br><br>('264 Patent, Claim 16) | strip at the joint made of material that is capable of recovering original shape after deformation |
| 2 | resilient panel connector<br><br>and<br><br>resilient connector<br><br>('264 Patent, Claims 1, 2, 9, 11, 12) | strip at the joint made of material that is capable of recovering original shape after deformation |

**B.   Overview of Disputed Claim Terms**

| Claim Term No. | Term, Patent, Claim(s) | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| 1 | A cover assembly for a pick-up truck cargo box having first and second box rails, comprising:<br><br>('264 Patent, Claim 16) | The preamble is non-limiting | The preamble phrase "a pick-up truck cargo box having first and second box rails" is limiting.<br><br>In the alternative:<br>the preamble phrase "first and second box rails" is limiting if the larger preamble phrase "pick-truck cargo box having" is not found to be limiting by the Court. |
| 2 | A cover for a pick-up truck cargo box comprising:<br><br>('264 Patent, Claim 18) | The preamble is non-limiting | The preamble phrase "a pick-up truck cargo box" is limiting |

| | | | |
|---|---|---|---|
| 3 | A cover for a pick-up truck cargo box having left and right side box rails, and with multiple spaced apart stake pocket openings in the left and right side box rails, comprising:<br><br>('264 Patent, Claim 25) | The preamble is non-limiting | The preamble phrase "a pick-up truck cargo box having left and right side box rails, and with multiple spaced apart stake pocket openings in the left and right side box rails" is limiting. |
| 4 | A cover assembly for a pick-up truck cargo box having first and second box rails, with each box rail having a top surface, comprising<br><br>('224 Patent, Claim 1) | The preamble is non-limiting | The preamble phrase "a pick-up truck cargo box having first and second box rails, with each box rail having a top surface" is limiting.<br><br>In the alternative:<br>the preamble phrase "first and second box rails, with each box rail having a top surface" is limiting if the larger preamble phrase "pick-up truck cargo box having" is not found to be limiting by the Court. |
| 5 | A tonneau cover for a cargo box of a truck, the tonneau cover comprising:<br><br>('358 Patent, Claim 1) | The preamble is non-limiting | The preamble phrase "a cargo box of a truck" is limiting.<br><br>In the alternative:<br>the preamble phrase "a cargo box" is limiting if the larger preamble phrase "a cargo box of a truck" is not found to be limiting by the Court. |
| 6 | panel support<br><br>('224 Patent, Claims 1, 6, 9, 10; '264 Patent, Claim 16) | No construction necessary–plain and ordinary meaning | cover support section consisting of at least one surface that provides the primary support to a panel<br><br>In the alternative:<br>support section comprising a surface that provides the primary support to a panel |

| 7 | first holding element/ a second holding element<br><br>('224 Patent, Claims 1-4) | Not governed by 35 U.S.C. § 112, ¶ 6<br><br>first elongated support member/ second elongated support member | Means-plus-function subject to 35 U.S.C. § 112, ¶ 6. The corresponding structure for the "holding element" in the specification for the '224 patent is "a compression spring element, such as an air cylinder" |
| 8 | a folded upright position/ upright position<br><br>('224 Patent, Claim 1; '264 Patent, Claims 18, 25) | No construction necessary–plain and ordinary meaning | a folded perpendicular position/ a perpendicular position |
| 9 | together foldable through an obtuse angle past an upright position relative to the cab /together foldable through or past an upright position relative to the cab panel and leaving only the cab panel covering the cargo box<br><br>('264 Patent, Claims 18, 25) | Not indefinite<br><br>To the extent that it is deemed that a construction should be entered, this limitation should be construed according to its plain and ordinary meaning | Indefinite |
| 10 | top surface of the cover substantially flush with the top surface of the box rails<br><br>('264 Patent, Claim 16) | No construction necessary–plain and ordinary meaning<br><br>In the alternative: upward-facing surface of the cover substantially flush with the upward-facing surface of the box rails in a region where the | highest or uppermost surface of the cover substantially flush with the highest or uppermost surface of the box rails |

| | | cover interfaces with the box rails | |
|---|---|---|---|
| 11 | a cab panel fixed in place within the cargo box

('264 Patent, Claim 25) | No construction necessary–plain and ordinary meaning | a cab panel fixed in place in the cargo box allowing the cover to be generally flush with the cargo box rails |
| 12 | single-component construction between the front edge and rear edge

('358 Patent, Claim 1) | is of a single, integral part, as opposed to having a distinguishable central panel supported by separate frame member(s) | no components within the area defined by the unitary extruded panel beyond the extruded panel itself |
| 13 | unitary extruded panel

('358 Patent, Claim 1) | No construction necessary–plain and ordinary meaning | a single extrusion panel with a uniform cross-section or cross-sectional shape along its longitudinal length

In the alternative:
a single extruded panel with a uniform cross-section or cross-sectional shape along its longitudinal length |
| 14 | having an upper wall member and a lower wall member spaced apart from the upper wall member, the lower wall member at least partially defining a channel

('358 Patent, Claim 1) | No construction necessary–plain and ordinary meaning | having a dual-walled structure with a separate upper wall member and lower wall member, space between them, and the lower wall member at least partially defining a longitudinal slot or opening for coupling the cover to the cargo box |

The Parties dispute a total of fourteen terms—five terms within preambles of the Asserted Patents and nine terms within the claim bodies. (See ECF No. 71 at PageID 1156–58.) The Court first addresses the preamble terms, then addresses the claim body terms.

1.  **A cover assembly for a pick-up truck cargo box having first and second box rails, comprising:**

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|---|---|---|---|
| A cover assembly for a pick-up truck cargo box having first and second box rails, comprising: (ʼ264 Patent, Claim 16) | The preamble is non-limiting | The preamble phrase "a pick-up truck cargo box having first and second box rails" is limiting. In the alternative, the preamble phrase "first and second box rails" is limiting if the larger preamble phrase "pick-truck cargo box having" is not found to be limiting by the Court. | Non-limiting |

The Parties dispute whether the preamble term, "[a] cover assembly for a pick-up truck cargo box having first and second box rails, comprising:," from claim 16 of the ʼ264 Patent, is limiting.  (ECF No. 71 at PageID 1156.)

Defendant argues the preamble must be limiting because it (1) provides the antecedent basis for both "pick-up truck" and "cargo box";  and (2) "recites structural limitations with physical connections to other claim elements."  (ECF No. 69 at PageID 1095.)

Plaintiffs argue the preamble term "for a pick-up truck cargo box" is "simply the stated purpose and identified use for the cover, and therefore does not limit the claims."  (ECF No. 68 at PageID 1001 (citing Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002)).)  They argue that, like the disputed preamble term in C.R. Bard, Inc. v. M3 Sys., Inc.,

157 F.3d 1340, 1350 (Fed. Cir. 1998), here the term "pick-up truck cargo box" serves only as a "reference point" as to where the claimed cover is fixed, and not as a limitation. (Id. at PageID 1003.) They argue the phrase "first and second box rails" simply "clarifies how the claimed cover fits on a truck's cargo box." (Id.)

The Court finds the preamble language here is non-limiting. Where a "preamble simply states the intended use or purpose of the invention[,] . . . [it] usually does not limit the scope of the claim unless the preamble provides antecedents for ensuing claim terms and limits the claim accordingly." C.R. Bard, 157 F.3d at 1350. Here, the preamble is providing an antecedent basis for the body of the claim. See '264 Patent col. 10 ll. 31–33. However, even without the language from the preamble, the body of claim 18 recites a complete truck bed cover. See id. col. 10 ll. 31– 54. Thus, the preamble does not limit the claim. See Unwired Planet LLC v. Google Inc., 111 F. Supp. 3d 1120, 1127 (D. Nev. 2015) (finding although the preamble provided an antecedent basis for a term in the claim bodies, it was non-limiting because the claim bodies were "structurally complete on their own"), aff'd in relev. part Unwired Planet L.L.C. v. Google, Inc., 660 F. App'x 974 (Fed. Cir. 2016).

Furthermore, Defendant's argument for its alternative construction where only "'first and second box rails' is limiting" is unavailing. (ECF No. 69 at PageID 1095.) The "first and second box rails" provide only a "reference point," rather than being essential to understanding the claim body. See C.R. Bard, 157 F.3d at 1350. The body of claim 16 of the '264 Patent, even without reference to the preamble, describes a complete cover assembly. See '264 Patent, col. 9, ll. 40– 67. The only mention of the "first and second box rails" is in describing how the "lip plate of the first and second side rails" is supported—that is, where it is located. See id. col. 9 ll. 59–61.

Because of this, the preamble is only "provid[ing] [a] reference point[] . . . that aid[s] in defining the [cover] as set forth in the body of the claim." See C.R. Bard,, 157 F.3d at 1350.

Furthermore, the first and second box rails are not part of the claimed truck bed cover. See id. The specification makes clear the invention is a cover, (id. col. 1 ll. 34–35 ("[a]n improved pick-up truck cargo box cover has now been invented"), which can been used on a cargo box which "typically has left and right box rails." See id. col. 2 ll. 39–40. This demonstrates "the claim is for [a cover], not the combination of the [cover] and the [cargo bed] described by the preamble." Eaton Corp. v. Rockwell Int'l Corp., 323 F.3d 1332, 1341–42 (Fed. Cir. 2003) (describing the preamble in C.R. Bard as non-limiting).

**2. A cover for a pick-up truck cargo box comprising:**

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|---|---|---|---|
| A cover for a pick-up truck cargo box comprising: <br><br> ('264 Patent, Claim 18) | The preamble is non-limiting | The preamble phrase "a pick-up truck cargo box" is limiting | Non-limiting |

The Parties dispute whether the preamble term, "[a] cover for a pick-up truck cargo box comprising:," from claim 18 of the '264 Patent, is limiting. (ECF No. 71 at PageID 1156.)

Defendant argues the preamble must be limiting because (1) it provides the antecedent basis for both "pick-up truck" and "cargo box"; (2) it provides a structural limitation where the claim body requires the cover's cab panel be "fixed in place" on the truck's cargo box. (ECF No. 69 at PageID 1095.)

Plaintiffs argue the preamble language of "for a pick-up truck cargo box" is "simply the stated purpose and identified use for the cover, and therefore does not limit the claims." (Id. at PageID 1001 (citing Catalina Mktg., 289 F.3d at 808).) As support, Plaintiffs point to the body of claim 18, which lists elements which are part of the cover, not part of a pick-up truck cargo box. (Id.) Plaintiffs also argue the use of the word "for" follows the "standard pattern" for expressing a non-limiting intended use of a claim. (Id. at PageID 1001–02 (citing G.W. Aru, LLC v. W.R. Grace & Co.-Conn., 700 F. Supp. 3d 325, 340 (D. Md. 2023)).)

The Court finds the preamble language here is non-limiting. Where a preamble "simply states the intended use or purpose of the invention[,] . . . [it] usually does not limit the scope of the claim unless the preamble provides antecedents for ensuing claim terms and limits the claim accordingly." C.R. Bard, 157 F.3d at 1350. Here, the preamble is providing an antecedent basis for the body of the claim. (See '264 Patent col. 10 l. 31 (preamble stating "for a pick-up truck cargo box"), ll. 32–33 (claim body stating "a cab panel fixed in place on the cargo box adjacent to a cab of the pick-up truck).) However, even without the language from the preamble, the body of claim 18 recites a complete truck bed cover. (See '264 Patent col. 10 ll. 31–54.) Thus, the preamble does not limit the claim. See Unwired Planet, 111 F. Supp. 3d at 1127.

**3. A cover for a pick-up truck cargo box having left and right side box rails, and with multiple spaced apart stake pocket openings in the left and right side box rails, comprising:**

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|---|---|---|---|
| A cover for a pick-up truck cargo box having left and right side box rails, and with multiple spaced apart stake pocket openings in the left and right side box rails, comprising:<br><br>('264 Patent, Claim 25) | The preamble is non-limiting | The preamble phrase "a pick-up truck cargo box having left and right side box rails, and with multiple spaced apart stake pocket openings in the left and right side box rails" is limiting. | Non-limiting |

The Parties dispute whether the preamble term, "[a] cover for a pick-up truck cargo box having left and right side box rails, and with multiple spaced apart stake pocket openings in the left and right side box rails, comprising:," from claim 25 of the '264 Patent, is limiting. (ECF No. 71 at PageID 1156.)

Defendant argues the preamble is limiting because (1) it provides an antecedent basis for multiple phrases in the claim body; (2) there is a "structural limitation"; and (3) prosecution history shows the preamble was used to overcome prior art. (See ECF No. 69 at PageID 1096.)

Plaintiffs make the same argument here as with the previous preamble language—that the preamble contains the stated purpose and identified use for the cover. (See ECF No. 68 at PageID

1004.)  Plaintiffs argue the stake pockets are simply reference points for where the cover may be installed and are thus not limiting.  (Id. at PageID 1005 (citing C.R. Bard, 157 F.3d at 1350).)

The Court finds the preamble language here is non-limiting.  "When limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention."  Eaton, 323 F.3d at 1339.  Here, the claims provide an antecedent basis for the terms in the claim body.  See '264 Patent col. 11 ll. 14–17, col. 12 ll. 9–12.  However, the preamble is non-limiting because the claimed cover is just that—a cover. See id. col. 11 l. 14 – col. 12 l. 19.  The claim is not for a combination of a cover plus a cargo box with box rails and stake pocket openings.  See id.  Because the preamble language in dispute describes only a reference point for the claimed cover, see id., it is non-limiting.  See C.R. Bard, 157 F.3d at 1350.

Defendant argues C.R. Bard is distinguishable because the preamble language here (1) describes structural limitations and (2) was relied upon in the prosecution history.  (See ECF No. 69 at PageID 1099.)  Neither argument is availing.  First, the "structural limitation" where the side rails are attached to the truck's left- and right-side box rails and the cab panel is fixed in place on the cargo box are reference points to the cargo box.  See '264 Patent col. 11 ll. 14–17, col. 12 ll. 5–6, 9–12.  They are not structural limitations, as the bodies of the claims "stand on their own" to describe a cover.  See Unwired Planet, 111 F. Supp. 3d at 1127, aff'd in relev. part Unwired Planet, 660 F. App'x 974.

Second, the prosecution history to which Defendant cites is unavailing.  When the patentee added claim 25[1] to the '264 Patent, the patentee did not demonstrate a "clear reliance . . . on the preamble to persuade the Patent Office that the claimed invention is [patentable]."  See In re

_____

[1] At the time of prosecution, current claim 25 was claim 52.  (See ECF No. 67-5 at PageID 877–83.)

Cruciferous Sprout Litig., 301 F.3d 1343, 1347 (Fed. Cir. 2002).  Rather, the patentee overcame

prior art by stating how the cab panels would not cover the stake pocket openings.  (ECF No. 67-

5 at PageID 883.)  This is a clarification of the structure of the cover, not clear reliance on the

language of the preamble to overcome prior art.  See Weiland Sliding Doors & Windows, Inc. v.

Panda Windows & Doors, LLC, No. 10-cv-677-JLS-mdd, 2011 WL 3490481, at *5 (S.D. Cal.

Aug. 10, 2011) (finding no clear reliance on the preamble to overcome prior art where "[t]he

patentee did not use the preamble in way [sic] that defined the claimed invention").

4.    **A cover assembly for a pick-up truck cargo box having first and second box rails, with each box rail having a top surface, comprising:**

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|---|---|---|---|
| A cover assembly for a pick-up truck cargo box having first and second box rails, with each box rail having a top surface, comprising ('224 Patent, Claim 1) | The preamble is non-limiting | The preamble phrase "a pick-up truck cargo box having first and second box rails, with each box rail having a top surface" is limiting. In the alternative, the preamble phrase "first and second box rails, with each box rail having a top surface" is limiting if the larger preamble phrase "pick-up truck cargo box having" is not found to be limiting by the Court. | Non-limiting |

The Parties dispute whether the preamble term, "A cover assembly for a pick-up truck

cargo box having first and second box rails, with each box rail having a top surface, comprising,"

from claim 1 of the '224 Patent, is limiting.  (ECF No. 71 at PageID 1156–57.)

Defendant argues the preamble must be limiting because (1) it provides the antecedent basis for four phrases in the claim body: "first side box rail," "second side box rail," "top surface of the first box rail," and "top surface of the second box rail"; and (2) there is a structural interaction of these terms in the claim. (ECF No. 69 at PageID 1096.)

Again, Plaintiffs make the same argument in opposition—that the preamble contains the stated purpose and identified use for the cover. (See ECF No. 68 at PageID 1005.) The only difference is the language of "each box rail having a top surface," which Plaintiffs argue do not limit the claims because it provides context for the cover assembly. (Id.)

The Court finds the preamble language here is non-limiting for the same reasons as preamble term three. That is, while the claims provide an antecedent basis for the terms in the claim body, the claim is not for a combination of a cover plus a cargo box with box rails each having a top surface. See supra Section III.B.3.

Defendant's arguments are also substantially the same as for preamble term three. See supra Section III.B.3; (ECF No. 69 at PageID 1096–97.) The Court again finds Defendant's arguments unavailing for similar reasons, enumerated below.

First, the "structural interaction" Defendant points to, where the claim "prohibit[s] the cover assembly's 'panel supports' from overlying the truck's 'first and second box rails,', (id. at PageID 1097), are reference points to the cargo box. See '224 Patent col. 8 ll. 9–28. They are not structural limitations, as the bodies of the claims "stand on their own" to describe a cover. See Unwired Planet, 111 F. Supp. 3d at 1127, aff'd in relev. part Unwired Planet, 660 F. App'x 974.

Second, the prosecution history to which Defendant cites is unavailing. When the patentee amended the preamble of claim 1 of the '224 Patent, the patentee did not demonstrate a "clear reliance . . . on the preamble to persuade the Patent Office that the claimed invention is

[patentable]." See In re Cruciferous, 301 F.3d at 1347. Rather, the patentee overcame prior art by giving locational context as to the side rails of the cover. (See ECF No. 67-9 at PageID 923.) This is a clarification of the structure of the cover—not clear reliance on the language of the preamble to overcome prior art. See Weiland, 2011 WL 3490481, at *5.

5. **A tonneau cover for a cargo box of a truck, the tonneau cover comprising:**

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|------|-----------------------------------|-----------------------------------|--------------------|
| A tonneau cover for a cargo box of a truck, the tonneau cover comprising: ('358 Patent, Claim 1) | The preamble is non-limiting | The preamble phrase "a cargo box of a truck" is limiting. In the alternative, the preamble phrase "a cargo box" is limiting if the larger preamble phrase "a cargo box of a truck" is not found to be limiting by the Court. | Non-Limiting |

The Parties dispute whether the preamble term, "A tonneau cover for a cargo box of a truck, the tonneau cover comprising:," from claim 1 of the '358 Patent, is limiting. (ECF No. 71 at PageID 1157.)

Defendant argues the preamble must be limiting because (1) it provides the antecedent basis for "cargo box"; and (2) the preamble imposes a structural limitation where the claim body requires a physical connection because the cover's "cab panel" must be "fixed in place" on the truck's "cargo box" (ECF No. 69 at PageID 1097.)

Plaintiffs here make the same argument as the previous preamble language—that the preamble contains the stated purpose and identified use for the cover. (See ECF No. 68 at PageID 1006.) Plaintiffs argue the invention is directed to a tonneau cover, not to a cargo box, and a non-

limiting instruction would "'most naturally align with the patent's description of the invention,'

and would therefore be the 'correct construction.'"  (Id. (quoting Renishaw, 158 F.3d at 1250).)

The Court finds the preamble language is non-limiting.  Here, the preamble is providing

an antecedent for the body of the claim.  See '358 Patent col. 7 ll. 36–37 (preamble stating "for a

cargo box of a truck"), l. 49 (claim body stating "the forward section mountable to the cargo box").

However, even without the language from the preamble, the body of claim 18 recites a complete

truck bed cover.  See id. col. 7 l. 36 – col. 8 l. 5.  Thus, the preamble does not limit the claim.  See

Unwired Planet, 111 F. Supp. 3d at 1127.

6.    panel support

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|---|---|---|---|
| panel support ('224 Patent, Claims 1, 6, 9, 10; '264 Patent, Claim 16) | No construction necessary–plain and ordinary meaning | cover support section consisting of at least one surface that provides the primary support to a panel  In the alternative: support section comprising a surface that provides the primary support to a panel | Plain and ordinary meaning |

The Parties dispute the construction of the term "panel support" from claims 1, 6, 9, and

10 of the '224 Patent and claim 16 of the '264 Patent.  (ECF No. 71 at PageID 1157.)

Defendant argues its construction is supported by the specification and the prosecution

history of the '224 Patent.  (ECF No. 67 at PageID 794.)  Plaintiffs argue Defendant pointed to no

clear disavowal or lexicography in the specification and no disavowal or disclaimer in the

prosecution history.  (ECF No. 70 at PageID 1144–45.)

20

The Court applies plain and ordinary meaning to the term "panel support" as it appears in claims 1, 6, 9, and 10 of the '224 Patent and claim 16 of the '264 Patent. The Court analyzes Defendant's specification and prosecution history arguments in turn.

Regarding the specification, Defendant argues the '224 Patent specification equates "support" with "primary support" because the specification uses the phrase "support surfaces" and indicates that "the sides of the panels . . . may be supported by the outer support surface . . . and the inner support surface . . . of the side rails." (ECF No. 67 at PageID 794 (citing '224 Patent, col. 6 ll. 49–51, col. 3 ll. 12–27, col. 7 ll. 14–18, 31–34).) This argument, however, is unavailing. None of the portions of the specification to which Defendant cites contain the word "primary" or any synonym of the word. (Cf. '224 Patent, col. 6 ll. 49–51, col. 3 ll. 12–27, col. 7 ll. 14–18, 31– 34.) Thus, there is no clear and unmistakable disclaimer which equates "support" and "primary support" such that the Court should depart from plain and ordinary meaning to require the limitation. See Thorner, 669 F.3d at 1366–67.

Regarding the prosecution history of the '224 Patent, Defendant points to occasions where the patentee overcame two prior art references: Block and Lathers. (ECF No. 67 at PageID 795.) Defendant first points to the patentee's adding "panel support" to the claim to distinguish the claim language from the "support surface of the side rail" in Block, arguing the amendment supports its construction. (ECF No. 67 at PageID 795 (citing ECF No. 67-9 at PageID 923).) Defendant then argues the patentee differentiated Lathers based on "primary support" where the patentee "insisted that the 'panel is supported on the seal . . . resting on the lip or projection above and to the left side of the rail section.'" (Id. (citing ECF No. 67-9 at PageID 924–25).)

Defendant's prosecution argument is also unavailing, as it has not shown the patentee unequivocally disavowed "support" to mean "primary support." See Chimie v. PPG Indus., Inc.,

402 F.3d 1371, 1384 (Fed. Cir. 2005) (citing Omega Eng'g., Inc. v. Raytek Corp., 334 F.3d 1314, 1324 (Fed. Cir. 2003)).  Nowhere in the amendments from Block or Lathers does the patentee mention a primary support.  (Cf. ECF No. 67-9 at PageID 923–925.)  At best, this "alleged disavowal is ambiguous . . . [and so the Court] . . . decline[s] to find prosecution disclaimer."  See CUPP Computing AS v. Trend Micro Inc., 53 F.4th 1376, 1382 (Fed. Cir. 2022) (quoting Avid Tech., Inc. v. Harmonic, Inc., 812 F.3d 1040, 1045 (Fed. Cir. 2016)).

Because the patentee did not "act as [its] own lexicographer" or "disavow[] the full scope of [panel support] either in the specification or during prosecution," the Court gives "panel support" its plain and ordinary meaning.  See Thorner, 669 F.3d at 1365.

### 7.    first holding element/a second holding element

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|---|---|---|---|
| first holding element/a second holding element<br><br>('224 Patent, Claims 1-4) | Not governed by 35 U.S.C. § 112 ¶ 6<br><br>first elongated support member/ second elongated support member | Means-plus-function subject to 35 U.S.C. § 112 ¶ 6. The corresponding structure for the "holding element" in the specification for the '224 patent is "a compression spring element, such as an air cylinder"<br><br>Compromise:<br>first extending pole, rod, or bar/second extending pole, rod, or bar | 35 U.S.C. § 112 ¶ 6 does not apply<br><br>first support member/second support member |

The Parties dispute the construction of the term "first holding element/a second holding element" from claims 1 through 4 of the '224 Patent.  (ECF No. 71 at PageID 1157.)  The Parties first dispute whether it is a means-plus-function claim governed by 35 U.S.C. § 112 ¶ 6.  (Id.)  The Parties then dispute the construction of the term.  (Id.)  The Court addresses each in turn.

a.     Means-Plus-Function Claiming

A means-plus-function claim term is governed by 35 U.S.C. § 112 ¶ 6, which states:

> An element in a claim for a combination may be expressed as a means or
> step for performing a specified function without the recital of structure,
> material, or acts in support thereof, and such claim shall be construed to
> cover the corresponding structure, material, or acts described in the
> specification and equivalents thereof.

To determine whether § 112 ¶ 6 applies, courts look for the word "means." See Williamson

v. Citrix Online, LLC, 792 F.3d 1339, 1348 (Fed. Cir. 2015).  Where the word "means" is absent

from the claim term, there is a rebuttable presumption that § 112 ¶ 6 does not apply.  Id.  The

central inquiry in overcoming this presumption is "whether the words of the claim are understood

by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for

structure."  Id. (citation omitted).  "[W]hen a claim term lacks the word 'means,' the presumption

can be overcome and § 112 [¶] 6 will apply if the challenger demonstrates that the claim term fails

to 'recite[ ] sufficiently definite structure' or else recites 'function without reciting sufficient

structure for performing that function.'"  Id. (quoting Watts v. XL Sys., Inc., 232 F.3d 877, 880

(Fed. Cir. 2000)) (edits in original).

Defendant contends the claimed "holding elements" trigger the means-plus-function

requirements of the pre-America Invents Act ("AIA") 35 U.S.C. § 112 ¶ 6 because the term uses

the word "element."  (ECF No. 67 at PageID 801.)  It argues "element" is a "nonce" word which

merely replaced the word "means" such that § 112 ¶ 6 applies.  (Id.)  Defendant argues because

the claim term is a means-plus-function claim, the claim is defined by the one structure disclosed

in the specification: "a compression spring element, such as an air cylinder."  (Id. at PageID 802

(citing '224 Patent, col. 5 ll. 11–19, Fig. 12).)

Plaintiffs argue Defendant fails to rebut the presumption that § 112 ¶ 6 does not apply where the claim term does not use "means." (ECF No. 68 at PageID 1010.) They argue a POSITA would understand "holding element" to have a sufficiently definite structure. (See id.)

Here, the Court finds Plaintiffs' argument persuasive. Defendant has not overcome the presumption that § 112 ¶ 6 does not apply because "holding element" recites a sufficiently definite structure. See Williamson v. Citrix Online, LLC, 792 F.3d at 1348. The language of claim 1 demonstrates a structure, where the "holding element" has two ends, each of which are attachable to other objects within the claimed structure. See '224 Patent col. 8 ll. 24–29. This is a sufficiently definite structure. See Powell v. Home Depot U.S.A., Inc., 663 F.3d 1221, 1230 (Fed. Cir. 2011) (finding the claim term "dust collection structure" recited a sufficiently definite structure where it demonstrated "interconnectedness" with other objections within the claimed structure).

Defendant argues claim 1 does not provide sufficient structure to avoid § 112 ¶ 6 because, while it describes an object with first and second ends, the claim does not disclose the structure of those ends or how they connect to other structures. (ECF No. 69 at PageID 1114.) This argument, however, is unavailing. The claim discloses how and where the "holding element" is connected. (See '224 Patent col. 8 ll. 24–29.) This is sufficiently definite such that § 112 ¶ 6 does not apply. See Powell, 663 F.3d at 1230.

b.    Construction

Defendant contends "holding element" should be construed to mean "compression spring" because the specification does not use permissive language in discussing the compression spring requirement and the compression spring is the only embodiment in the specification. (Id. at PageID 1116 (citing '224 Patent col. 5 ll. 11–19).) As a compromise position, Defendant suggests

24

"first extending pole, rod, or bar" and "second extending pole, rod, or bar."  (ECF No. 81 at PageID 1583.)

Plaintiffs initially did not set forth a construction, only contending the claim term was not governed by 35 U.S.C. § 112 ¶ 6.  (See ECF No. 77 at PageID 1237.)  After the Court requested an alternative construction, Plaintiffs proffered "first elongated support member" and "second elongated support member."  (See id.)  Plaintiffs argue this construction tracks the plain and ordinary meaning of the term.

First, the Court declines to limit the term to "compression spring."  Nowhere in the specification is there a clear and unmistakable disclaimer that "holding element" means "compression spring."  See id. at 1366; cf. '224 Patent.  Even if the specification does not use permissive language regarding the compression spring, that does not mean the patentee clearly disclaimed "holding element" to exclusively mean "compression spring."  See id.

It is true that the compression spring is the only embodiment in the specification.  However, "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction."  Hill-Rom, 755 F.3d at 1372 (cleaned up).  Because there is no clear intention to limit the claim scope of "holding element" to "compression spring," the Court will not limit the term to "compression spring."  See id.

Second, the Court construes "holding element" to be "support member."  The claim language supports this construction, as the holding element's purpose is to "hold[]"—that is, support—"the cover in a folded upright position."  See id. col. 8 ll. 27–28.  For the reasons set forth below, the Court does not import Plaintiffs' "elongated" limitation.

Plaintiffs argue "elongated" has support in the specification and claim language. (See ECF No. 77 at PageID 1237.) That argument, however, is unavailing. As to the claim language, Plaintiffs argue the first holding element's "requirement of two spaced-apart ends inherently invokes a structure with an elongated shape." (See id. at PageID 1238.) The claim language, however, does not support Plaintiffs' addition of "elongated." The '224 Patent makes no mention of "elongated" or any synonym in claim 1. Furthermore, the language of the claim does not demonstrate that a non-elongated objection could not serve the purpose of the first holding element. See '224 Patent col. 8 ll. 25–27. Rather, the language simply requires the first holding element to have a first end attachable to a bottom surface of the front panel and a second end attachable to the first side rail. See id.

Turning next to the specification language, Plaintiffs argue "the specification's references to a 'compression spring element' and 'air cylinder,' [as well as Figure 12,] are aligned with the 'elongated' aspect of the proposed construction." (ECF No. 77 at PageID 1239.) The specification language, however, is not clear that the holding element must be elongated. The Court thus declines to import Plaintiffs' "elongated" limitation. See Thorner at 1366–67.

The Court thus construes "first holding element" and "a second holding element" as "first support member" and "second support member."

### 8. a folded upright position/upright position

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|---|---|---|---|
| a folded upright position/upright position<br><br>('224 Patent, Claim 1; '264 Patent, Claims 18, 25) | No construction necessary–plain and ordinary meaning | a folded perpendicular position / a perpendicular position | a relatively vertical position |

The Parties dispute the construction of the term "a folded upright position" / "upright position" from claim 1 of the '224 Patent and claims 18 and 25 of the '264 Patent. (ECF No. 71 at PageID 1157.)

Defendant argues the term "upright" should be construed as "perpendicular" or "vertical." (ECF No. 67 at PageID 797.) In support, Defendant points to the intrinsic record, where the claims describe moving a folded cover past an upright position. (Id. (citing '264 Patent, col. 10 ll. 49–51, col. 12 ll. 17–19).) Defendant contends this means the folded panels must rotate past a perpendicular position such that no portion of those panels leans over the open cargo bed. (Id.)

Plaintiffs argue the specification of the '224 Patent makes clear that "upright" is not meant to be a 90 degree angle. (ECF No. 68 at PageID 1012.) Plaintiffs point to Figure 12 and its specification description, which demonstrates the cover pivoted beyond a 90 degree orientation. (Id. (citing the '224 Patent, Fig. 12).) Plaintiffs argue Defendant's construction would read out the embodiment in Figure 12, which is improper. (Id. at PageID 1013 (citing Kaufman v. Microsoft Corp., 34 F.4th 1360, 1372 (Fed. Cir. 2022)).)

Regarding claims 18 and 25 of the '264 Patent, Plaintiffs argue a POSITA would understand the term "foldable through an obtuse angle past an upright position relative to the cab"

to mean the panels can be folded beyond a perpendicular, 90-degree angle relative to the cab.  (Id. at PageID 1013–14.)  Plaintiffs aver these claims cover the same general concept, but with more specific language.  (Id.)

The Court construes "a folded upright position" / "upright position" as "a relatively vertical position."  The specification of the '224 Patent supports this construction, as it states "[a]ll of the folded panels may then be folded into a substantially upright position, as shown in [Figure] 12, to fully open the cover."  See '224 Patent, col. 6 ll. 38–40.  Figure 12 further shows the cover pivoted beyond a 90 degree orientation.  Id. fig. 12.

Defendant's arguments in support of its construction are unavailing.  In asking the Court to construe the term to be perpendicular, Defendant reads out the embodiment in Figure 12 of the '224 Patent, which shows a non-perpendicular angle.  The Court cannot read out an embodiment.  Kaufman v. Microsoft Corp., 34 F.4th 1360, 1372 (Fed. Cir. 2022).

Defendant's argument that "upright" and "substantially upright" must be different is also unavailing.  In examining the '224 and '264 Patents, the patentee did not intent to distinguish between "upright" and "substantially upright," even when using different terms.  Thus, "upright" can refer to a range of positions such that "substantially upright" is acceptable.  See Regalo Int'l, LLC v. Munchkin, Inc., No. CV 15-1103-LPS, 2016 WL 7107229, at *3 (D. Del. Dec. 6, 2016) (construing "upright" to include "relatively vertical" where the patent did not suggest a reason that "upright" was required to be exactly vertical).

**9. together foldable through an obtuse angle past an upright position relative to the cab / together foldable through or past an upright position relative to the cab panel and leaving only the cab panel covering the cargo box**

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|---|---|---|---|
| together foldable through an obtuse angle past an upright position relative to the cab / together foldable through or past an upright position relative to the cab panel and leaving only the cab panel covering the cargo box ('264 Patent, Claims 18, 25) | Not indefinite. To the extent that it is deemed that a construction should be entered, this limitation should be construed according to its plain and ordinary meaning | Indefinite | Not indefinite Plain and ordinary meaning |

The Parties dispute the construction of the terms "together foldable through an obtuse angle past an upright position relative to the cab" and "together foldable through or past an upright position relative to the cab panel and leaving only the cab panel covering the cargo box" from claims 18 & 25 of the '264 Patent. (ECF No. 71 at PageID 1157–58.)

Defendant specifically dispute the phrases "a folded upright position" and "an upright position" as they appear in claims 18 and 25 of the '264 Patent and claim 1 of the '224 Patent. (ECF No. 67 at PageID 798.) Defendant avers that if "upright position" equals "perpendicular position," then the disputed phrases requiring rotation "through" or "past" that upright position can be understood. (Id.) However, if "upright position" equals "substantially upright position,"

then the phrase is indefinite.  (Id. (citing Nautilus, 574 U.S. at 909–10; All Dental Prodx, LLC v. Advantage Dental Prods., Inc., 309 F.3d 774, 779–80 (Fed. Cir. 2002)).)

Defendant argues if "upright" means "substantially upright," then there is a range of angles where the cover must rotate "through or past."  (Id. at PageID 799.)  Pointing to the specification and Figure 12, Defendant argues this could include where "substantially upright" means fully open.  (Id.)  Thus, it would not be possible to rotate "through or past" an upright position that is fully open.  (Id.)

Plaintiffs argue the term is not indefinite because a POSITA would be able to understand the claim term "to mean that the panels are able to fold through an obtuse angle and beyond a purely perpendicular (90-degree) orientation."  (ECF No. 68 at PageID 1015.)  In support of their argument, Plaintiffs point to Figure 12, which shows the cover "fully folded or open" past a 90-degree angle.  (Id. (citing '264 Patent col. 2 ll. 23–24, col. 3 l. 65–col. 4 l. 2).)  Plaintiffs also point to the portion of the specification accompanying Figure 12, which states a rubber bumper may be on the second panel to "provide a soft contact with the cab . . . when the cover . . . is fully opened."  (Id.)

The Court finds the terms "together foldable through an obtuse angle past an upright position relative to the cab" and "together foldable through or past an upright position relative to the cab panel and leaving only the cab panel covering the cargo box" as they appear in claims 18 and 25 of the '264 Patent are not indefinite.

Defendant argues if "upright" means "substantially upright," then the term is indefinite because there is a range of angles where the cover must rotate "through or past."  (Id. at PageID 799.)  The specification of the '264 Patent, however, informs a POSITA as to the scope of the claim term.  See Nautilus, 572 U.S. at 898–99.  Specifically, Figure 12 of the '264 Patent demonstrates

30

the cover fully folded beyond a purely perpendicular angle.  (See '264 Patent, Fig. 12.)  Thus,

Defendant's arguments as to indefiniteness are unavailing.



FIG. 12

Furthermore, the specification provides that a "rubber bumper" may be placed on the

bottom of the second panel "to provide a soft contact with the cab when the cover is fully opened,

as shown in F[igure] 12."  ('264 Patent, col. 6, ll. 34–36.)  This rubber bumper would only be

necessary if the cover could go beyond a purely perpendicular angle to make contact with the cab

of the truck.  Thus, the claim term, read in light of the specification, would inform a POSITA as to

its scope with reasonable certainty.  See Nautilus, 572 U.S. at 898–99.

The Court now proceeds to the construction of the terms.  As demonstrated in Figure 12

and the specification portion cited above, the patentee did not "act as [its] own lexicographer" or

"disavow[] the full scope of [the terms] either in the specification or during prosecution."  See

Thorner, 669 F.3d at 1365.  Accordingly, the Court gives the terms "together foldable through an

obtuse angle past an upright position relative to the cab" and "together foldable through or past an

upright position relative to the cab panel and leaving only the cab panel covering the cargo box"

their plain and ordinary meaning.  See id.

**10. top surface of the cover substantially flush with the top surface of the box rails**

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|---|---|---|---|
| top surface of the cover substantially flush with the top surface of the box rails<br><br>('264 Patent, Claim 16) | Plain and ordinary meaning<br><br>Alternative: upward-facing surface of the cover substantially flush with the upward-facing surface of the box rails in a region where the cover interfaces with the box rails | highest or uppermost surface of the cover substantially flush with the highest or uppermost surface of the box rails | upward-facing surface of the cover substantially flush with the upward-facing surface of the box rails in a region where the cover interfaces with the box rails |

The Parties dispute the construction of the term "top surface of the cover substantially flush with the top surface of the box rails" from claim 16 of the '264 Patent.  (ECF No. 71 at PageID 1158.)

Defendant contends its proposed construction is supported by the claim language, specification, and prosecution history.  (ECF No. 67 at PageID 791–94.)  Defendant also points to several courts which construed "top surface" as an object's highest surface, and which construed "top" to mean "highest or uppermost."  (See id. at PageID 792–93 (collecting cases).)

Plaintiffs argue plain and ordinary meaning applies to "top surface" when read in context of the specification.  (ECF No. 68 at PageID 1015–16 (citing '264 Patent, col. 6, ll. 44–46, col. 7 ll. 22–23).)  It argues Defendant's construction unnecessarily limits the term without support from the intrinsic evidence.  (Id. at PageID 1016.)  As an alternative construction, Plaintiffs suggest "upward-facing surface of the cover substantially flush with the upward-facing surface of the box rails in a region where the cover interfaces with the box rails."  (ECF No. 77 at PageID 1236.)  Plaintiffs argue the alternative construction "reflects the plain and ordinary meaning of 'top

surface' as an upward-facing surface, consistent with the claim's context and the specification."
(Id. (citing '264 Patent col. 6 ll. 42–48, figs. 4–5).)

The Court construes "top surface of the cover substantially flush with the top surface of the box rails" to be "upward-facing surface of the cover substantially flush with the upward-facing surface of the box rails in a region where the cover interfaces with the box rails." The specification supports this construction, as Figures 3 shows "top" and "bottom" plates in Figure 3 as being upward-facing and downward-facing, respectively. (See '264 Patent col. 4 ll. 19–24.)

### 11. a cab panel fixed in place within the cargo box

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|------|-----------------------------------|-----------------------------------|--------------------|
| a cab panel fixed in place within the cargo box<br><br>('264 Patent, Claim 25) | No construction necessary—plain and ordinary meaning | a cab panel fixed in place in the cargo box allowing the cover to be generally flush with the cargo box rails | plain and ordinary meaning |

The Parties dispute the construction of the term "a cab panel fixed in place within the cargo box" from claim 25 of the '264 Patent. (ECF No. 71 at PageID 1158.)

Defendant argues its proposed construction is supported by the claim language, specification, and prosecution history. (ECF No. 67 at PageID 799–800.) Plaintiffs contend plain and ordinary meaning applies to the claim term. (ECF No. 68 at PageID 1016.)

Because neither the claim language, specification, or prosecution history support deviating from plain and ordinary meaning, the Court applies plain and ordinary meaning to the term "a cab panel fixed in place within the cargo box" as it appears in claim 25 of the '264 Patent. The Court addresses each of Defendant's arguments in turn.

First, Defendant argues the claim language makes clear the cab panel must reside within the cargo, not above it.  (ECF No. 67 at PageID 799.)  The claim, however, states the cab panel must be fixed in place within the cargo box.  See '264 Patent, cl. 25.  The claim does not state that no part of the cab panel can be located above the cargo box.  See id.

Second, Defendant argues the specification "consistently describes the panels as resting in the box so that the highest surface of the cover assembly is generally flush with the highest point of the box rails."  (ECF No. 67 at PageID 799.)  This argument, however, is unavailing because this alleged "consistent description" does not contain any "words of manifest exclusion or restriction" such that the patentee clearly disclaimed the scope of the claim term.  See Hill-Rom, 755 F.3d at 1372; Thorner, 669 F.3d at 1366–68.

Third, Defendant points to the prosecution history, arguing there is a clear distinguishing of prior art.  (ECF No. 67 at PageID 800.)  In support, Defendant points to where the patentee stated "the fourth or cab panel is in the cargo box, allowing the cover to be generally flush with the cargo box rails."  (Id. (citing ECF No. 67-5 at PageID 880).)  The patentee then linked that same language to claim 25, arguing it was allowable for the same reasons.  (Id. (citing ECF No. 67-5 at PageID 883).)  Defendant argues this is a clear distinguishing of prior art such that Defendant's construction is correct.  (Id.)

Defendant's prosecution history argument is unavailing.  The Court does not find the patentee's statement that the "cab panel is in the cargo box, allowing the cover to be generally flush with the cargo box rails," (ECF No. 67-5 at PageID 880), to be a clear disavowal.  See Hill-Rom, 755 F.3d at 1372.  When the patentee made this statement, it was contrasting the claim with prior art which "necessarily place[d] the cover on top of the cargo box."  (See ECF No. 67-5 at PageID 880.)  Thus, there would only be "clear disavowal" such that the cab panel could not be

on top of the cargo box. See Hill-Rom, 755 F.3d at 1372. There would not be "clear disavowal" such that the cover would need to be generally flush with the cargo box rails. See id.

Because the patentee did not "act as [its] own lexicographer" or "disavow[] the full scope of [the term] either in the specification or during prosecution," the Court gives "a cab panel fixed in place within the cargo box" its plain and ordinary meaning. See Thorner, 669 F.3d at 1365.

### 12. single-component construction between the front edge and rear edge

| Term | Plaintiffs' Proposed Construction[2] | Defendant's Proposed Construction | Final Construction |
|---|---|---|---|
| single-component construction between the front edge and rear edge<br><br>('358 Patent, Claim 1) | is of a single, integral part, as opposed to having a distinguishable central panel supported by separate frame member(s) | no components within the area defined by the unitary extruded panel beyond the extruded panel itself | is an integrated part, as opposed to having a distinguishable central panel supported by frame member(s) |

The Parties dispute the construction of the term "single-component construction between the front edge and rear edge" from claim 1 of the '358 Patent. (ECF No. 71 at PageID 1158.)

Defendant contends its proposed construction is supported by the claim language and the prosecution history. (ECF No. 67 at PageID 789.) Plaintiffs contend there is no reason to depart from the Extang court's previous ruling on this construction. (ECF No. 68 at PageID 1018.) Plaintiffs argue the Extang court considered Defendant's arguments and disposed of them, instead

---

[2] Plaintiffs' construction is based on a construction of the term "the forward section has a single component construction between the front edge and the rear edge of the front section that is defined by the unitary extruded panel" in a previous litigation, Extang Corp. Undercover, Inc. v. Truck Accessories Grp., LLC, No. CV 19-923 (MN), 2020 WL 6888277, at *1 (D. Del. Nov. 24, 2020). There, the Delaware court decided the term would mean "the front-most section of the covering over the cargo box is an integrated part, as opposed to having a distinguishable central panel supported by frame member." Id.

finding Plaintiffs' proposed construction appropriate based on the language of the claims, the specification, and the prosecution history.  (Id. at PageID 1018–19.)

The Court finds the Extang court's logic persuasive and adopts its construction of the term here.  Like the Parties' dispute here, "the dispute [in Extang] center[ed] on whether the forward section must consist of only the extruded panel."  See 2020 WL 6888277, at *9; (ECF No. 71 at PageID 1158.)  The Extang court reached its construction after examining the claim in question, a dependent claim, the specification, and the prosecution history.  See id.

Like the Extang court, the Court finds "the claim language suggests that what distinguishes the single-component construction from the multi-component construction is the lack of the support frame members of the multi-component construction."  See id.  The language of claim 1 distinguishes between the rear sections, which have a multi-component construction which includes both a central panel and support frame members, and the forward section, which has a single-component construction between the front edge and the rear edge defined by the unitary extruded panel.  (See '358 Patent, col. 7 l. 41–col. 8 l. 5.)  This suggests the single-component construction must have the central panel, but no support frame members.  See id; Extang, 2020 WL 6888277, at *9.

Defendant argues its proposed construction is better supported by the claim language because "[b]y its plain terms, [the] claim element . . . describes a bounded area within which there can be only one component."  (ECF No. 67 at PageID 788.)  This argument is unavailing, as the claim element indicates the "forward section" is a construction of components, not a bounded area. See '358 Patent col. 8 ll. 2–3; Extang, 2020 WL 6888277, at *9 ("Claim 1 describes the forward section as having 'single-component construction' in contrast to sections having 'multi-component construction.'")

36

The Court also finds the specification supports the <u>Extang</u> court's construction.  <u>See</u> 2020 WL 6888277, at *9–10.  The specification "emphasizes that the forward section . . . is formed of a unitary panel, rather than a central panel and surrounding support frame."  <u>Id.</u> at *9 (citing '358 Patent col. 6 ll. 5–12).  An independent reading of the cited portions of the '358 Patent confirms this—the specification describes the forward panel as an "integral element" where "separate frame components surrounding a central panel" have been eliminated.  <u>See</u> '358 Patent col. 6 ll. 5–12.

Finally, the prosecution history supports the <u>Extang</u> court's construction.  "The patentee distinguished the claims from the prior art by explaining that the prior art 'fail[ed] to disclose or suggest any providing [sic] the front section of the tonneau cover with a *single-component construction* between the front edge and the rear edge that is defined by the unitary extruded panel.'"  <u>See</u> 2020 WL 6888277, at *10 (emphasis and alterations in original).

Defendant contends the prosecution history supports its proposed construction.  (ECF No. 67 at PageID 789.)  Defendant argues the patentee, in overcoming prior art references Calder and Kerr III, explained its tonneau cover was a single-component construction, rather than a multi-component construction, between the front and rear edge of the unitary extruded panel.  (<u>Id.</u> (citing ECF No. 67-12 at PageID 958).)  Defendant argues Plaintiffs surrendered claim scope covering additional components because the patentee "never suggested that additional components could be added to that area, so long as they were not frame members."  (<u>Id.</u>)

Defendant's argument, however, is unavailing.  Where the patentee discussed the prior art references Calder and Kerr III, it stated that neither reference disclosed a single-component construction between the front and rear edge that is defined by a unitary extruded panel.  (ECF No. 67-12 at PageID 958–59.)  This is a "parroting" of the claim language; it is not a clear disavowal

or disclaimer that no other components could ever be located within the area of the forward panel.
See Abbott Labs., 566 F.3d at 1289.

Finally, Defendant's arguments against the Extang court's logic are unavailing. Defendant argues there are two problems with the Extang court's analysis: (1) "any concern about a bulkhead seal embodiment [from the specification] was unwarranted because none of the claims require a bulkhead seal"; and (2) "the concern about 'attaching' components [from dependent claim 10] to the extruded panel misapplies the area language in claim 1."  (ECF No. 67 at PageID 790.)

First, Defendant argues the Extang court's construction was incorrectly based on "embodiments in the specification describing structures that can be attached to the extruded panel (e.g., bulkhead seal members)."  (Id. (citing 2020 WL 6888277, at *9–10).)  Defendant argues it is an unclaimed embodiment and should not guide the construction.  (See id.)  Defendant's argument regarding the bulkhead seal embodiment from the specification, however, is unavailing. The Extang court did not import a limitation from the specification; rather, they read claim 1 "in view of the specification."  See 2020 WL 6888277, at *9–10; Phillips, 415 F.3d at 1315.

Second, Defendant's argument regarding dependent claim 10 is unavailing because dependent claim 10 contradicts Defendant's construction.  See '358 Patent, col. 8 ll. 40–45. Defendant argues there can be no components in the area defined by the unitary extruded panel. (See ECF No. 67 at PageID 788.)  However, dependent claim 10 contains "end caps," '358 Patent, col. 8 ll. 40–45, which constitute "other elements attached to the extruded panel."  "  See 2020 WL 6888277, at *9.  It thus contradicts Defendant's construction.  At the same time, it comports with Plaintiffs' construction because the "end caps" may still be part of the single, integrated part.  See '358 Patent col. 8 ll. 42–46.

### 13. unitary extruded panel

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|---|---|---|---|
| unitary extruded panel<br><br>('358 Patent, Claim 1) | No construction necessary–plain and ordinary meaning | a single extrusion panel with a uniform cross-section or cross-sectional shape along its longitudinal length<br><br>In the alternative:<br>a single extruded panel with a uniform cross-section or cross-sectional shape along its longitudinal length | Plain and ordinary meaning |

The Parties dispute the construction of the term "unitary extruded panel" from claim 1 of the '358 Patent.  (ECF No. 71 at PageID 1158.)

Defendant points to the prosecution history to support its proposed construction.  (ECF No. 67 at PageID 785.)  Defendant argues, when claim 1 of the '358 Patent was initially rejected over prior art, the patentee added the term "unitary" to the claim.  (Id. (citing ECF No. 67-11 at PageID 946).)  To distinguish over the prior art, the patentee explained the "unitary extruded panel" was a structural limitation with a uniform cross-section along its length.  (Id. (citing ECF No. 67-12 at PageID 959).)  Defendant argues this statement makes the feature "mandatory."  (Id. at PageID 786 (citing Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1374-–75 (Fed. Cir. 2008)).)

Plaintiffs argue plain and ordinary meaning applies because "the plain language of the claim is unambiguous and the record shows no redefinition or disavowal that would warrant a rewriting of this plain language."  (ECF No. 68 at PageID 1019.)

The Court applies plain and ordinary meaning to the term "unitary extruded panel" as it appears in claim 1 of the '358 Patent.  Defendant's only argument involves prosecution disavowal.  (See ECF No. 69 at PageID 1100–01.)  The prosecution history regarding Defendant's limitation involving a "uniform cross-section or cross-sectional shape along its longitudinal length" does not show clear and unmistakable disclaimer.  Rather, the patentee used permissive language in stating "[f]or example, extruded panels are formed with a uniform cross-section along its length."  (See ECF No. 67-12 at PageID 959.)  This does not rise to the level of "clear and unmistakable" to show prosecution disclaimer.  See In re Lockwood, 679 F. App'x 1021, 1027 (Fed. Cir. 2017) ("statements to the [US]PTO contain[ing] words like 'may' and 'for example[]' . . . are not the 'clear and unmistakable' statements necessary for disclaimer"); Orthopaedic Hosp. v. DJO Glob., Inc., No. 19-CV-970 JLS (wvg), 2020 WL 3498167, at *6 (S.D. Cal. June 29, 2020) (finding no prosecution history disclaimer where "the language used to distinguish [prior art] is permissive, rather than restrictive").

Regarding Defendant's argument where the patentee substituted "unitary extruded" for "single extrusion," there is similarly no clear and unmistakable disclaimer such that the Court departs from plain and ordinary meaning of the term.  See Omega Eng'g, 334 F.3d at 1326.

Because the patentee did not "act as [its] own lexicographer" or "disavow[] the full scope of [panel support] either in the specification or during prosecution," the Court gives "unitary extruded panel" its plain and ordinary meaning.  See Thorner, 669 F.3d at 1365.

**14. having an upper wall member and a lower wall member spaced apart from the upper wall member, the lower wall member at least partially defining a channel**

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|------|-----------------------------------|-----------------------------------|--------------------|
| having an upper wall member and a lower wall member spaced apart from the upper wall member, the lower wall member at least partially defining a channel<br><br>('358 Patent, Claim 1) | No construction necessary–plain and ordinary meaning | having a dual-walled structure with a separate upper wall member and lower wall member, space between them, and the lower wall member at least partially defining a longitudinal slot or opening for coupling the cover to the cargo box | Plain and ordinary meaning |

The Parties dispute the construction of the term "having an upper wall member and a lower wall member spaced apart from the upper wall member, the lower wall member at least partially defining a channel" from claim 1 of the '358 Patent. (ECF No. 71 at PageID 1158.)

Defendant argues its proposed construction has support in the claim language as well as the specification. (ECF No. 67 at PageID 786–87.) Plaintiffs argue plain and ordinary meaning should apply because the meaning of the claim term is clear. (ECF No. 68 at PageID 1019.) They argue Defendant's construction improperly reads in a permissive embodiment from the specification into the claim. (Id. (citing Phillips, 415 F.3d at 1323).)

The Court applies plain and ordinary meaning to the term "having an upper wall member and a lower wall member spaced apart from the upper wall member, the lower wall member at

least partially defining a channel" as it appears in claim 1 of the '358 Patent. Defendant's two arguments are unavailing for the following reasons.

First, Defendant argues its construction is supported by claims 4, 5, 8, and 9, which are dependent claims to claim 1. (Id.) Specifically, it argues the dependent claims "confirm that the 'channel' recited . . . refers to a longitudinal slot or opening for coupling the cover to the cargo box." (ECF No. 69 at PageID 1101–02.) Given Defendant cites no legal authority for its argument, it is unclear which legal doctrine involving dependent claims Defendant is arguing. To the extent Defendant is arguing that a plain and ordinary claim construction would be inconsistent with the dependent claims, that argument is unavailing. To be sure, the Court cannot "interpret an independent claim in a way that is inconsistent with a claim which depends from it." Wright Med. Tech., Inc. v. Osteonics Corp., 122 F.3d 1440, 1445 (Fed. Cir. 1997). That, however, is not the case here, as it is possible to read the independent and dependent claims together when interpreting the claim term under plain and ordinary meaning. Claim 4 can still have an "internal rib" that is positioned within claim 1's structure under plain and ordinary meaning. See '358 Patent col. 8 ll. 12–17. Claim 5 can provide that the "channel" slidably receive a "tonneau-to-cargo-box-attachment clamp" under plain and ordinary meaning. See id. col. 8 ll. 18–20. Additionally, claims 8 and 9 can still describe the "channel" as being positioned within the dual walls or in a central planar region under plain and ordinary meaning. See id. col. 8 ll. 31–39.

Next, Defendant attempts to read in an embodiment from the specification. (See ECF No. 67 at PageID 787.) Defendant states of the three types of channels present in the specification, two are always prefaced by a modifier, while one is not. (Id.) From this, Defendant argues its construction comports with the specification. (Id.) This argument is also unavailing, as the patentee did not clearly act as its own lexicographer, nor was there a clear and unmistakable

disclaimer.  See Thorner, 669 F.3d at 1366–67 (Fed. Cir. 2012).    Indeed, there is no clear and

unmistakable disclaimer because there are three types of channels in the specification and no

"words of manifest exclusion or restriction" stating the requirements of the channel.  See Hill-

Rom, 755 F.3d at 1372–73.

For the reasons given above, the Court gives "having an upper

Because the patentee did not "act as [its] own lexicographer" or "disavow[] the full scope

of [the term] either in the specification or during prosecution," the Court gives "having an upper

wall member and a lower wall member spaced apart from the upper wall member, the lower wall

member at least partially defining a channel" its plain and ordinary meaning.  See Thorner, 669

F.3d at 1365.

## IV.    CONCLUSION AND SUMMARY OF CONSTRUCTIONS

For the reasons given above, the Court adopts the following constructions for each

disputed term:

| Claim Term No. | Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Final Construction |
|---|---|---|---|---|
| 1 | A cover assembly for a pick-up truck cargo box having first and second box rails, comprising:<br><br>('264 Patent, Claim 16) | The preamble is non-limiting | The preamble phrase "a pick-up truck cargo box having first and second box rails" is limiting.<br><br>In the alternative, the preamble phrase "first and second box rails" is limiting if the larger preamble phrase "pick-truck cargo box having" is not found to be limiting by the Court. | Non-limiting |

| | | | | |
|---|---|---|---|---|
| 2 | A cover for a pick-up truck cargo box comprising:<br><br>('264 Patent, Claim 18) | The preamble is non-limiting | The preamble phrase "a pick-up truck cargo box" is limiting | Non-limiting |
| 3 | A cover for a pick-up truck cargo box having left and right side box rails, and with multiple spaced apart stake pocket openings in the left and right side box rails, comprising:<br><br>('264 Patent, Claim 25) | The preamble is non-limiting | The preamble phrase "a pick-up truck cargo box having left and right side box rails, and with multiple spaced apart stake pocket openings in the left and right side box rails" is limiting. | Non-limiting |
| 4 | A cover assembly for a pick-up truck cargo box having first and second box rails, with each box rail having a top surface, comprising<br><br>('224 Patent, Claim 1) | The preamble is non-limiting | The preamble phrase "a pick-up truck cargo box having first and second box rails, with each box rail having a top surface" is limiting.<br><br>In the alternative, the preamble phrase "first and second box rails, with each box rail having a top surface" is limiting if the larger preamble phrase "pick-up truck cargo box | Non-limiting |

| | | | | |
|---|---|---|---|---|
| | | | "having" is not found to be limiting by the Court. | |
| 5 | A tonneau cover for a cargo box of a truck, the tonneau cover comprising: ('358 Patent, Claim 1) | The preamble is non-limiting | The preamble phrase "a cargo box of a truck" is limiting. In the alternative, the preamble phrase "a cargo box" is limiting if the larger preamble phrase "a cargo box of a truck" is not found to be limiting by the Court. | Non-Limiting |
| 6 | panel support ('224 Patent, Claims 1, 6, 9, 10; '264 Patent, Claim 16) | No construction necessary–plain and ordinary meaning | cover support section consisting of at least one surface that provides the primary support to a panel In the alternative: support section comprising a surface that provides the primary support to a panel | plain and ordinary meaning |
| 7 | first holding element/a second holding element ('224 Patent, Claims 1-4) | Not governed by 35 U.S.C. § 112 ¶ 6 first elongated support member/ second elongated support member | Means-plus-function subject to 35 U.S.C. § 112 ¶ 6. The corresponding structure for the "holding element" in the specification for the '224 patent is "a compression spring element, such as an air cylinder" Compromise: first extending pole, rod, or bar / second extending pole, rod, or bar | 35 U.S.C. § 112 ¶ 6 does not apply first support member / second support member |
| 8 | a folded upright position/upright position ('224 Patent, Claim 1; '264 Patent, Claims 18, 25) | No construction necessary–plain and ordinary meaning | a folded perpendicular position/ a perpendicular position | a relatively vertical position |
| 9 | together foldable through an obtuse angle past an | Not indefinite. To the | Indefinite | |

| | | | |
|---|---|---|---|
| | upright position relative to the cab" / "together foldable through or past an upright position relative to the cab panel and leaving only the cab panel covering the cargo box<br><br>('264 Patent, Claims 18, 25) | extent that it is deemed that a construction should be entered, this limitation should be construed according to its plain and ordinary meaning | | Not indefinite<br><br>plain and ordinary meaning |
| 10 | top surface of the cover substantially flush with the top surface of the box rails"<br><br>('264 Patent, Claim 16) | Plain and ordinary meaning<br><br>In the alternative: upward-facing surface of the cover substantially flush with the upward-facing surface of the box rails in a region where the cover interfaces with the box rails | highest or uppermost surface of the cover substantially flush with the highest or uppermost surface of the box rails | upward-facing surface of the cover substantially flush with the upward-facing surface of the box rails in a region where the cover interfaces with the box rails |
| 11 | a cab panel fixed in place within the cargo box<br><br>('264 Patent, Claim 25) | No construction necessary–plain and ordinary meaning | a cab panel fixed in place in the cargo box allowing the cover to be generally flush with the cargo box rails | plain and ordinary meaning |
| 12 | single-component construction between the front edge and rear edge<br><br>('358 Patent, Claim 1) | is of a single, integral part, as opposed to having a distinguishable central panel supported by separate frame member(s) | no components within the area defined by the unitary extruded panel beyond the extruded panel itself | is an integrated part, as opposed to having a distinguishable central panel supported by frame member(s) |
| 13 | unitary extruded panel<br><br>('358 Patent, Claim 1) | No construction necessary–plain and ordinary meaning | a single extrusion panel with a uniform cross-section or cross-sectional shape along its longitudinal length | plain and ordinary meaning |

| | | | In the alternative:<br>a single extruded panel with a uniform cross-section or cross-sectional shape along its longitudinal length | |
|---|---|---|---|---|
| 14 | having an upper wall member and a lower wall member spaced apart from the upper wall member, the lower wall member at least partially defining a channel<br><br>('358 Patent, Claim 1) | No construction necessary–plain and ordinary meaning | having a dual-walled structure with a separate upper wall member and lower wall member, space between them, and the lower wall member at least partially defining a longitudinal slot or opening for coupling the cover to the cargo box | plain and ordinary meaning |

**IT IS SO ORDERED**, this the 3rd day of July, 2025.

/s/ Jon P. McCalla
JON P. MCCALLA
UNITED STATES DISTRICT JUDGE